COMPTON-HILL IMPROVEMENT COMPANY, Appellant, v. TOWER'S EXECUTORS AND DEVISEES.

Division Two, November 12, 1900.

1. **Deed:** SERVITUDE: BREACH OF COVENANT: INJUNCTION. Where a parcel of land is conveyed subject to servitudes imposed both upon the grantee and upon the grantor with respect to his remaining property, the former who seeks to enjoin the latter from an attempted breach of the covenants must not himself be guilty of a violation of the restrictions contained in the conveyance. Injunction is the proper remedy, but he who would invoke the aid of a court of equity "must come with clean hands."

2. **Contract:** INTENTION: CORRELATIVE OBLIGATION: SPECIFIC PERFORMANCE. Though a contract on its face and by its terms may appear to be binding upon one party only, yet if it was the manifest intention of the parties that there should be a correlative obligation on the other party, the law will imply such obligation.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*Kehr & Tittmann* for appellant.

(1)   By his deed to Nolker, Tower imposed upon the remaining portion of his property in said Block No. 1366, a servitude for the benefit of Nolker's lot, which passed to plaintiff with the latter as an easement appurtenant thereto. Washburn's Easements and Servitudes (4 Ed.), 115; Coughlin v. Barker, 46 Mo. App. 54.   (2) A party will not be permitted to use his land in a manner inconsistent with his contract, and injunction is the proper remedy.   Hall v. Wesster, 7 Mo. App. 56; Sharp v. Cheatham, 88 Mo. 507; 3 Pomeroy's Eq. Jur., sec. 1295 and note, and also note, p. 314; also Vol. 2, secs. 689-91, p. 138; 1 High on Injunctions (3 Ed.), secs. 849-851; 1 Warvelle on Vendors, p. 457; Seymour v. McDonald, 4 Sandford's Chy. R. 502.   (3) Wherever the real estate dealt with is burthened in its mode of use, for the benefit of other property, this amounts to a contract which equity will specifically enforce, whether it has been expressed in the shape of a covenant, or of a condition, or has been left to be gathered from the circumstances. The benefit of the restriction will pass on the sale of the dominant estate as an easement or incident of ownership. And in like manner, a purchaser of the servient estate will be held bound by the same duties and obligations as those under whom he claims.   Whitney v. Railroad, 11 Gray 359; Clark v. Martin, 49 Pa. St. 289; St. Andrew's Church App., 67 Pa. St. 512; Columbia College v. Lynch, 70 N. Y. 440; Lattimer v. Livermore, 72 N. Y. 174; Newbold v. Peabody Heights Co., 70 Mary. R. 493; Webb v. Robbins, 77 Ala. 176; Coudert v. Sayre, 46 N. J. Eq. 386; Sharp v. Rogers, 110 Mass. 385; Jeffreys v. Jeffreys, 117 Mass. 189; Peck v. Conway, 119 Mass. 546; Hamlin v. Werner, 144 Mass. 396; Ladd v. City of Boston, 151 Mass. 585; s. c., 21 Am. St. Reps., 484; Watrous v. Allen, 57 Mich. 362; Parker v. Nightingale, 6 Allen 341; German v. Chapman, 7 Ch.

Div. 271; Richards v. Revitt, 7 Ch. Div. 226; Renals v. Cowlishaw, 9 Ch. Div. 125-9; Tulk v. Moxhay, 11 Beav. 571; 2 Phill. Chy. 774-7; Child v. Douglas, Kay, 560-75; Waterman on Specific Performance of Contracts, sec. 115, p. 145. (4) Equity cases are heard *de novo* in the Supreme Court and the court will review the whole case on the evidence.   Courtney v. Blackwell, 150 Mo. 245; Lins v. Lenhardt, 127 Mo. 271; Blount v. Spratt, 113 Mo. 48; Benne v. Schnecko, 100 Mo. 250; McElroy v. Maxwell, 101 Mo. 294.

*Edward S. Robert* for respondents.

(1) (a) One in default has no standing in equity to compel performance by another party similarly situated, and he who seeks to enforce a covenant against another must be without fault. He who seeks equity must do equity. Pomeroy's . Eq. Jur., secs. 3 and 4; Warvelle on Vendors, pages 73-76; Bispham's Prin. of Equity, secs. 67-69; Irwin v. Bleakley, 67 Pa. St. 24; Vawter v. Bacon, 89 Ind. 565; Cronk v. Trumble, 66 Ill. 428; Warren v. Richmond, 53 Ill. 52; Stow v. Russell, 36 Ill. 18; Southworth v. Hopkins, 11 Mo. 331; Turner v. Mellier, 59 Mo. 526; Electric, etc., Co. v. Gill, 125 Mo. 140; Rosenburge v. Jones, 118 Mo. 559; O'Reilly v. Diss, 41 Mo. App. 184.   (b) When lots are laid out with an established front, the owners of inside lots "do not expect that the owners of corner lots will change the frontage or cause the rear of their lots to abut upon the adjoining lots" and they have a right to insist that the original plan establishing the frontage shall be respected.   Cook v. Benson, 62 Ia. 170. (c) The deed from Tower to Nolker established the standard of size and use for the Nolker lot, as well as the Tower lot, and Tower has the right to insist upon this standard against Nolker's grantees.   Talmadge v. Bank, 26 N. Y. 105; Cook v. Benson, 62 Ia. 170; Parker v. Nightingale, 6 Allen 341; Trustee v. Lynch, 70 N. Y. 449; Philips v. Philips, 48 Pa.

178; Lampman v. Milks, 21 N. Y. 505; Lewis v. Atlas Ins. Co., 61 Mo. 534; Glover v. Henderson, 120 Mo. 378; Coal Co. v. Brewing Co., 20 Mo. App. 18; Simmons v. Cloonan, 47 N. Y. 9; Curtis v. Ayrault, 47 N. Y. 79; Roberts v. Roberts, 55 N. Y. 275; Spencer v. Kilmer, 151 N. Y. 398. (2) Where there is any uncertainty a court of equity will construe the instrument and try to reach the intention of the parties from the whole instrument, and the examination of the surrounding circumstances. The real intention of the parties at the time of the execution is the primary inquiry in interpreting all contracts. Warvelle on Vendors, sec. 4, page 120; Hoyt v. Kimball, 49 New Hampshire 322; Gathwright v. Callaway Co., 10 Mo. 663; Springstein v. Samson, 22 N. Y. 706; Emery v. Webster, 42 Me. 204; Field v. Lighter, 118 Ill. 17. (3) (a) A court of equity will not enforce a contract that does not appeal to good conscience or which was induced by or founded in fraud or into which fraud has entered, for a party does not, by such contract, get that for which he really bargained. He who comes into equity must come with clean hands. Pomeroy's Eq. Jur. 400; Codman v. Horner, 18 Ves. 10; Warvelle on Vendors, 751-752; Erwin v. Bailey, 72 Ala. 467; Kelley v. Railroad, 74 Cal. 557; Moon v. Crowder, 72 Ala. 79; Bruck v. Tucker, 42 Cal. 346; Fish v. Lesser, 69 Ill. 394; Emmons v. Moore, 85 Ill. 304; Brady's App., 66 Pa. St. 277; Duretts v. Hook, 8 Mo. 374. (b) Where specific performance is sought the contract must be certain and mutual. Wendover v. Baker, 25 S. W. Rep. 918; Paris v. Haley, 61 Mo. 453; Taylor v. Williams, 45 Mo. 80. (c) It requires a much stronger case to maintain a bill to enforce specific performance than to resist such bill. Veth v. Gerth, 92 Mo. 67. (4) (a) Where the circumstances surrounding a contract have so entirely changed as to render its enforcement inequitable, or where its enforcement would entail greater injustice than it would remedy, covenants of restriction will not be enforced. Pomeroy's Eq. Jur., 400;

Story's Eq. Jur., pp. 750 and 769-787; Bispham's Prin. of Eq. 578; Jackson v. Stephenson, 156 Mass. 496; Trustees v. Thacher, 87 N. Y. 311; Chartier's Black Coal Co. v. Mellon, 152 Pa. 286; Starkie v. Richmond, 155 Mass. 188. (b) The right of alienation being an inherent and inseparable quality of an estate in fee simple, restrictions absolutely against alienations are void. This must also be true if circumstances so change as to cause the covenants to have this effect. Potter v. Couch, 141 U. S. 315; 2 Washburn on Real Property, p. 9.

GANTT, P. J.—Prior to the conveyance upon which this bill for injunction is predicated, George F. Tower was the owner of a parcel of land in the city of St. Louis containing about 4 85-100 acres, and known as city block 1366, with a frontage of 610 feet on the east line of Grand avenue, and a depth eastwardly of 295 feet.

On December 4, 1889, said Tower by warranty deed conveyed the southern 100 feet of said land to William F. Nolker for $9,000.

The deed contained the following conditions and restrictions:

"Provided, however, and this conveyance is upon condition, that the grantee herein shall not, nor shall his heirs or assigns, erect or allow to be erected on the premises above described, any dwelling nearer than 50 feet to the east line of Grand avenue.   The grantee shall not, nor shall his heirs or assigns erect or put upon the Grand avenue front of the premises hereby conveyed, a building of any kind save and except one dwelling house and appurtenances, and such dwelling house shall not cost less than $7,500.   The grantee shall not, nor shall his heirs or assigns erect or permit any business establishment to be erected on the premises hereby conveyed, the property being conveyed for residence purposes only, nor shall he or they create or permit any nuisance to be created or maintained on said premises or any part

thereof. In the event of the breach of any of the foregoing conditions, the estate hereby granted and conveyed shall end, and the title to the property aforesaid shall forthwith revert to the grantors herein, their heirs and legal representatives. And in consideration of the acceptance of the foregoing conditions by the grantee, and of the purchase money aforesaid, the said grantors, George F. Tower and wife, do by this conveyance subject all property now owned by them in said city block No. 1366, to the same conditions and restrictions above set forth, so that neither of the said grantors will, nor their heirs or assigns shall hold, use or convey their said property or any part thereof except in conformity with and subject to the same conditions and restrictions as herein stated, and in case of sale, said property shall be sold only in lots of the size of the lot hereby conveyed or larger." This deed was recorded December 10, 1889.

On January 6, 1890, Nolker conveyed the one hundred feet to Henry Haarstick, the president of the Compton-Hill Improvement Company, and on the following day, January 7, 1890, Mr. Haarstick conveyed the same to said company. In the negotiations which led up to the deed of Tower to Nolker, Julius Pitzman acted as the agent of Nolker and drew the conveyance, and Moses Greenwood, a real estate agent, represented Mr. Tower. Nolker was a stockholder in the Compton-Hill Improvement Company.

The evidence very clearly discloses that Pitzman was notified by Greenwood, that Tower would not sell to the Compton-Hill Company, and would insist on knowing definitely the name of the buyer and the purpose to which the 100 feet was to be put. Pitzman told him he would let him know the next day. Next day Pitzman told Greenwood that Nolker was the man who desired to purchase the property, and "would put a very handsome house on it." Pitzman at that time was secretary of the Compton-Hill Company and had the management of its addition. He prepared the spe-

cial covenants as to the restrictions on the lot which Tower signed without legal advice. He testified: "I had a plat showing the contemplated subdivision of Compton Heights. I told him (Greenwood) we were trying to make arrangements with Mr. Nolker to build *a very fine house* on the corner of Grand and Longfellow avenues, and we considered it of very great importance to get him, but the lot 118 feet wide which was all we had would not be sufficient, and we wanted 100 feet more. I showed him the plat and showed him that the idea was to give Mr. Nolker about a square lot 200 feet by 200 feet, with a view to improving it in an elegant manner." Nolker testified that he desired to build on Compton Heights and paid $9,000 for the Tower 100 feet, but neither he nor Pitzman testified to any contract whereby he was to buy Lot One in the Compton Heights plat.

Within less than a month Nolker disposed of the 100 feet to the Compton Heights Company and Nolker never built on it.

In July, 1890, the Compton Heights Company filed a plat, which will accompany this opinion, whereby the 100 feet bought of Tower was included in their addition and subdivided so as to become a part of three lots, to-wit, lots 2, 3 and 4.

Lot 4 was sold to Mrs. Tinker who erected a house thereon and a stable, the latter being largely if not entirely on the part of her lot which was originally a part of the Tower-Nolker 100 feet.

No residence has ever been built on the 100 feet. In May, 1893, Tower notified the Compton Heights Company through its president, Mr. Haarstick, that he had platted for sale the remainder of his tract, city block 1366. This plat indicated lots smaller in frontage than 100 feet. Thereupon this bill for injunction was filed.

The circuit court of the city of St. Louis dismissed the bill, and plaintiff appeals.

I.   The contention of plaintiff is that by his deed to Nolker, George F. Tower imposed upon the remainder of his tract in city block 1366, a servitude for the benefit of the Nolker lot, which amounts to an equity running with the land as an easement appurtenant thereto. Authorities are cited and reasons urged to sustain this proposition and the corollary that injunction is the proper remedy for a breach of such covenants.

We think these are correct statements of the law, but they fail to state that which is equally true in this case, that by the same deed a servitude was also imposed upon the lot conveyed by Tower to Nolker, and by him to plaintiff.

By the acceptance of that deed Nolker and his assigns bound themselves that only a dwelling house and its appurtenances should be built on this one hundred feet, and it should be used for residence purposes only, and the house should cost not less than $7,500, and front on Grand avenue.

It needs only to be stated that the stable built by Mrs. Tinker on lot 4 of the plat was a plain violation of the covenants in said deed. It is not a residence worth $7,500 or a residence in any sense within the terms of that deed. It does not front on Grand avenue, and said stable is not an appurtenance to a residence built on said lot 2, for the simple reason that no residence has been built on said lot.

The gist of plaintiff's case is that defendant's testator having by deed stipulated that he would convey the remaining 510 feet of his tract in lots having a frontage of 100 feet or more on Grand avenue with a depth of two hundred and ninety-five feet, his subsequent platting said remainder into smaller lots is a breach of his covenant, and should be restrained, but if Tower and his executors and assigns were bound to observe this restriction in the sale of their lots, was there not a correlative obligation upon Nolker and his assigns and associates to preserve the same plan in convey-

ance of the one hundred feet which fixed the size of lots in that city block? Such seems to be the trend of judicial opinion in this country.

While this restriction might at first blush appear to be binding only upon Tower, yet when we look into the circumstances surrounding this sale and the consideration upon which Tower imposed this servitude upon himself, it was, we think, the manifest intention of both parties to require Nolker and his assigns also to observe the plan thus laid out for the future improvement of this tract of land.

The obligation was mutual. As was said by this court in Glover v. Henderson, 120 Mo. loc. cit. 378, "Although a contract on its face and by its terms appears to be obligatory on one party only, yet if it was the manifest intention of the parties that there should be a correlative obligation on the other party, the law will imply such obligation." [Lewis v. Ins. Co., 61 Mo. 534.]

It is incredible that Tower intended by his deed to restrict his right to sell the remaining 510 feet of his block to tracts having at least 100 feet frontage with a depth of 295 feet, and at the same time permit his grantee Nolker to subdivide the 100 feet he was obtaining by the same deed, into lots with 50 or 25 feet frontage of any depth he might elect.

We construe this deed as imposing the same servitude as to the dimensions of the lot conveyed to Nolker as was imposed upon the remaining 510 feet, and Nolker and his assigns with full notice of his deed and its restrictions were no more at liberty to cut up the 100 foot lot conveyed to Nolker by Tower, into smaller tracts, than was Tower to subdivide his remaining 510 feet into smaller tracts than the Nolker tract. [Tallmadge v. Bank, 26 N. Y. 105; Cook v. Benson, 62 Iowa 170; Trustees v. Lynch, 70 N. Y. 440.]

Conceding, then, that Tower disregarded the restrictions in his deed to Nolker by platting his remaining 510 feet

in block 1366, into smaller lots with a frontage of fifty feet on Grand avenue and a depth of 140 feet, the question recurs, is plaintiff, a purchaser from Nolker with full notice of the restrictions of that deed, entitled to come into a court of equity and enjoin Tower's executors and devisees from selling according to the Tower plat? It is an ancient and honored maxim in courts of equity that "he who comes into equity must come with clean hands."

Says, Pomeroy, in his admirable treatise on Equity Jurisprudence, "Whatever may be the strictly accurate theory concerning the nature of equitable interference, the principle was established from the earliest days, that while a court of chancery could interpose and compel a defendant to comply with the dictates of conscience and good faith with regard to matters outside of the strict rules of the law, or even in contradiction to those rules, while it could act upon the conscience of a defendant, and force him to do right and justice, it would never thus interfere on behalf of a plaintiff whose own conduct in connection with the same matter or transaction had been unconscientious or unjust, or marked by want of good faith, or had violated any of the principles of equity and righteous dealing which it is the purpose of equity to sustain." [Vol. 1, sec. 398.]

If we are right in our construction of the deed, the plaintiff had no right to subdivide the Nolker lot into three, as it appears by the plat it has, and clearly it had no right to build or authorize Mrs. Tinker to build a stable on a lot on which it was expressly restricted to a residence and appurtenances thereto. Plaintiff then stands in the attitude of having violated the terms and restrictions of the identical contract and in the same way which it seeks to enjoin defendant from violating it.

Specific performance in such a case is refused upon the ground that plaintiff does not come into court with clean hands. It has no standing in a court of equity.

The fact that Tower in his lifetime did not go into equity to restrain plaintiff from subdividing the Nolker tract as it did or did not seek a rescission of his deed, does not deprive his executors and devisees of their right to resist plaintiff's effort for the injunction it asks in this case.

No estoppel has been created and equity must leave the plaintiff where it has placed itself.

The judgment of the circuit court is affirmed.

*Sherwood* and *Burgess, JJ.,* concur.