## TOWER et al., Appellants, v. COMPTON HILL IMPROVEMENT COMPANY.

### Division One, December 21, 1905.

1. **INCONSISTENT REMEDIES: Election.** Whenever the law supplies a party two methods of redress for the violation of an agreement, based upon inconsistent theories, he is put to his election, and his choice of either is a bar to his resort to the other.

2. ———: ———: **Abrogating Forfeiture Agreement: Subsequent Ejectment: Limitations.** Plaintiff's deed conveying a 100-foot lot to defendant, contained a provision that the grantee or his assigns should not erect on the lots a building of any kind except one dwelling house, to cost not less than $7,500, and for a violation of that agreement the property was to revert to plaintiff, and in consideration of the acceptance of said conditions and of the purchase money the plaintiff subjected other adjoining property to the same restrictions, and agreed that it should be sold only in 100-foot lots or larger. In 1890 defendant conveyed a portion of the rear of said lot, and the grantee in 1891 erected a small residence and stable thereon. To that, plaintiff made no objection but in 1903 subdivided his adjoining property into fifty-foot lots and notified defendant that he intended to sell them as subdivided. Defendant immediately instituted suit to restrain plaintiff from subdividing his property into smaller lots than 100 feet each, and on hearing, defendant's bill was dismissed, for the reason that both parties were equally wrong and defendant had not come into court with clean hands. Then, in 1901, plaintiff brought this' suit in ejectment, based on the forfeiture clause of his deed. *Held,*

1. That, having treated the action of the defendant in violating the terms of the deed as releasing him from the obligation not to subdivide his own property, and having set up that defense in the equity suit, plaintiff made an election of remedies, and is now precluded from asserting a right to vindicate the wrong done him by bringing an action of ejectment.

2. **Limitation.** That plaintiff was barred by the ten-year Statute of Limitation from maintaining ejectment, and the fact that he waited until after the Supreme Court determined the equity suit to bring his ejectment affords no legal excuse, but, on the contrary, only emphasizes the inconsistency of his two legal remedies.

3. ———: **Waiver.** The plaintiff cannot be heard to say, as bearing on the question of limitation, that he had the right to waive the first breach in the terms of his deed, namely, the subdivision of the lot by defendant's sale of a portion of it in 1890, and to insist upon the second breach of the terms of that deed, namely, the building of a stable by the grantee on that portion, and thus avoid the effect of the Statute of Limitations upon his right of action in the ejectment, for throughout the injunction suit plaintiff relied upon the first breach and that case was decided in his favor on that ground.

Appeal from St. Louis City Circuit Court.— *Hon. Franklin Ferriss,* Judge.

AFFIRMED.

*Edward S. Robert* and *Douglas W. Robert* for appellants.

(1) The stable built by Mrs. Tinker on lot 4 of the plat was a plain violation of the condition of the deed. It is not a residence worth $7,500, nor a residence in any sense within the terms of the deed. It does not front on Grand avenue, and said stable is not an appurtenance to a residence built on the lot in controversy, for the simple reason that no residence has been built on said lot. Compton Hill Improvement Co. v. Tower, 158 Mo. 290. (2) Ejectment is the proper remedy for the recovery of land after breach of a condition subse-

quent. Kirk v. Matier, 140 Mo. 23; Ruddick v. Railroad, 116 Mo. 25; Avery v. Railroad, 113 Mo. 561; Ellis v. Kyger, 90 Mo. 600; O'Brien v. Wagner, 94 Mo. 93; Clark v. Brookfield, 81 Mo. 503; Jones v. Railroad, 79 Mo. 96; Cowell v. Springs Co., 100 U. S. 55. (3) Even if the plaintiffs did waive the breach of the condition about subdividing, that would in nowise estop them from asserting their right of forfeiture for building the stable. Plaintiffs might have been indifferent to the one and not to the other, and they had the full statutory period in which to assert their right. The essential elements of estoppel are wanting. O'Brien v. Wagner, 94 Mo. 93; Ellis v. Kyger, 90 Mo. 600.

*Kehr & Tittmann* for respondent.

(1) The deed from Tower and wife to Nolker of December 4, 1889, vested the title in fee in Nolker and his assigns, and it remains so vested, notwithstanding a breach of condition subsequent, until re-entry by the grantor or his heirs. Appellants concede this, for they lay their right of entry as of January 18, 1901, the day upon which they brought this action. 2 Washburn on Real Property (6 Ed.), sec. 951, p. 13; Ruddick v. Railroad, 116 Mo. 33; Ellis v. Kyger, 90 Mo. 606; Hubbard v. Hubbard, 99 Mass. 192. The deed is not only a conveyance from Tower to Nolker of the lot, but also a conveyance by Tower to Nolker of an easement in the remaining 510 feet of Tower's property. (2) Restrictions inserted in a deed as part of a plan of improvement are not to be deemed conditions in the technical sense, although spoken of as conditions. A forfeiture does not arise from their breach. Ayling v. Kramer, 133 Mass. 12; Cassidy v. Mason, 171 Mass 507; 2 Devlin on Deeds, secs. 971 and 999; Post v. Weil, 115 N. Y. 361; City v. Wiggins Ferry Co., 88 Mo. 619; Hayes v. Ins. Co., 77 N. Y. 244. (3) Conditions which go to defeat an estate are strictly construed. The law abhors

forfeiture. Merrell v. Railroad, 96 Mo. 179; Stoddard v. Wells, 120 Mo. 29; Gratz v. Railroad, 165 Mo. 211; Crane v. Hyde Park, 135 Mass. 147; Dickson v. Railroad, 168 Mo. 90.  (4)  If the restrictions on Nolker's lot are treated as conditions, their breach occurred when lot 4 was enclosed and the Tinker residence built in 1890.  Appellants' right of action is barred by limita-tion as it is also lost by waiver and estoppel.  If Tower waived the breach as appellants now contend, we an-swer that a condition that destroys an estate is to be taken strictly and if once dispensed with, in whole or in part, is dispensed with forever.  Dumpor's Case, 4 Coke 119; Sharon Iron Co. v. Erie, 41 Pa. St. 341; Da-kin v. Williams, 17 Wend. 447; Ludlow v. Railroad, 12 Barb. 440.  (5)  Treating the acts of Nolker's assigns as a violation of the restrictions imposed on their lot, Tower in May, 1893, subdivided his tract and put it on the market in violation of the restrictions on it.  He thereby elected to abandon the contract and discharge the restrictions.  He sought his redress in that way and having elected his remedy and received the benefit of it, he can have none other.  Bigelow on Estoppel (5 Ed.), 673; 7 Ency. Pleading and Practice, 361-3; Ben-sieck v. Cook, 110 Mo. 182; Lilly v. Menke, 143 Mo. 146; Nanson v. Jacob, 93 Mo. 332; Com. Co. v. Railroad, 52 Mo. App. 413, 126 Mo. 349; Dry Goods Co. v. Warden, 151 Mo. 578; Bank v. Totten, 94 Mo. App. 603; Connihan v. Thompson, 111 Mass. 270; Rodermund v. Clark, 46 N. Y. 354; Steinbach v. Ins. Co., 77 N. Y. 502; Moller v. Tuska, 87 N. Y. 166; Conrow v. Little, 115 N. Y. 387; Hill's Adm. v. Huchabier's Adm., 70 Ala. 183; Luther v. Clay, 100 Ga. 236; Thompson v. Howard, 31 Mich. 309; Kinzie v. Wixom, 39 Minn. 387; Zwietusch v. Wat-kins, 61 Wis. 615; Doane v. Railroad, 165 Ill. 510; Gry-mes v. Sanders, 93 U. S. 55; McLean v. Clapp, 141 U. S. 429; Daniels v. Tearney, 102 U. S. 421.  (6)  A for-feiture can be enforced only by the grantor or his heirs. A devisee takes as purchaser, not as heir, Tower being

dead, his property passes to his devisees under the will. They cannot, as devisees, enforce the forfeiture and they cannot sue as heirs because the property passes by the will. Southard v. Railroad, 26 N. J. L. 21; Sauer v. Griffin, 67 Mo. 654; State ex rel. v. Pohl, 30 Mo. App. 321; Schulenburg v. Harriman, 88 U. S. 63; Ruch v. Railroad, 97 U. S. 696.

*Edward S. Robert* and *Douglas W. Robert* for appellants in reply.

We do not understand upon what theory defendant contends that we have waived this right or are estopped. The Statute of Limitation gives us ten years in which to sue. There is not a single element of estoppel present in the case at bar and instead of a waiver, Tower showed by his letter of May 11, 1893, that he did not propose to waive the breach of the building of the stable up against his property; that he did not choose to institute proceedings for a forfeiture because some imaginary lines had been drawn through the property is only in accordance with decency and good sense, but when the Tinker stable was built and he found that his property was converted into a back yard for the Compton Hill addition, then he asserted his right by treating the building of the stable as a breach of the condition. The cases cited under this point by defendant do not bear out their contention, because, as far as they are from the facts of this case, the parties in those cases took affirmative action, which amounted to a waiver. Ludlow v. Railroad, 12 Barb. 441; Dakin v. Williams, 17 Wend. 447; Sharon Iron Co. v. Erie, 41 Pa. St. 341; Dumpor's Case, 4 Coke 119.

MARSHALL, J.—This is an action of ejectment, instituted in the circuit court of the city of St. Louis, on the 18th of January, 1901, by the executors and devisees under the will of George F. Tower, deceased, to

recover a certain tract of land in City Block No. 1366, having a front of 100 feet on the east line of Grand avenue by a depth of 295 feet eastwardly, except 70 feet on the rear of said lot which has been thrown into lots 3 and 4 of "Compton Heights."

The ouster is laid as of the 18th of January, 1901.

The case was tried by the court without a jury, and the trial resulted in a judgment for the defendant, from which the plaintiffs appealed.

THE ISSUES.

The petition is in the usual form in such cases.

The answer admits the corporate character of the defendant and that it is in possession of the premises, and then denies every other allegation in the petition not specifically admitted. It then specially pleads that the land sought to be recovered is the south 100 feet of a large tract of 610 feet in City Block No. 1366 and fronting on Grand avenue, which belonged in 1889 to George F. Tower; that on the 4th of December, 1889, Tower conveyed the 100 feet to Nolker in consideration of $9,000, retaining the remaining 510 feet, and imposed upon both tracts certain restrictions with reference to subdividing and improving the respective parts, which will be more particularly referred to hereinafter; that on the 7th of January, 1890, the defendant became the owner of the premises by mesne conveyances from Nolker; and on the 8th of July, 1890, it subdivided the lot so purchased from Tower, together with other property owned by the defendant, adjoining the same, into what is known as "Compton Heights;" and on the 8th of July, 1890, filed a plat of that subdivision in the recorder's office of the city of St. Louis, which showed the rear end of the lot acquired from Tower to be incorporated in lots 3 and 4 of that subdivision, of all of which Tower had notice and knowledge; that immediately upon filing said plat, the defendant offered for sale the lots set out and de-

scribed in the subdivision; and on the 6th of August, defendant sold lot No. 4, which comprised, as aforesaid, a part of the eastern end of the lot acquired from Tower, to Philippine Tinker, who immediately improved said lot by building thereon; of all of which plaintiffs had knowledge, and in which they acquiesced, and, therefore, defendant says the plaintiffs are estopped to assert any violation of the covenants in the deed from Tower to Nolker. The answer further specially pleads the ten-year Statute of Limitations. The answer further pleads, that after the defendant had so subdivided the lot acquired from Tower and had sold it, Tower subdivided the remaining 510 feet into smaller lots and advertised the same for sale, and that he thereby elected between the remedies afforded by law for the violation, if any, of the terms of the conveyance to Nolker, and, hence, cannot maintain this action. The answer further specially pleads, that on the 22nd of July, 1893, the defendant instituted a suit in equity to restrain Tower from so subdividing the remaining 510 feet of the ground; that Tower defended said suit on the ground that the defendant herein had previously as aforesaid violated the terms of the deed to Nolker, and said defense was sustained by the lower court and the bill dismissed, and the judgment of the lower court was affirmed by this court, and, therefore, the defendant again pleads that the plaintiffs made an election of remedies.

The reply pleads that the deed from Tower to Nolker contained an express provision of re-entry, and was not simply a covenant; admits that the defendant subdivided the 100 feet acquired from Tower, but denies that Tower knew that the same was offered for sale; denies that the improvements on lot 4 of "Compton Heights Addition" were begun or completed in the year 1890, and further denies that the stable erected thereon cost $10,000; denies that Tower had knowledge

of the so-called improvements or that he acquiesced therein; avers that plaintiffs acquired the property from Tower by fraud, and denies that Tower or the plaintiffs are estopped from maintaining this action; denies the defense by limitation set up, and also that the plaintiffs have been guilty of any laches; admits that in 1893 Tower subdivided the remaining 510 feet, and avers that he had a right so to do, because defendant had violated the terms in the deed, but denies that the defendant is thereby relieved from the forfeiture under the other terms of the deed; and denies that plaintiffs have elected between the remedies afforded by law.

The case made is this:

Prior to December 10, 1889, George F. Tower owned a tract of land in City Block No. 1366, having a front of 610 feet on the east side of Grand avenue, and extending eastwardly 295 feet.

The defendant corporation owned the land immediately south thereof on the east side of Grand avenue, together with a large amount of other property extending eastwardly. It was engaged in the establishment of a subdivision to be called "Compton Heights," which was intended as a choice residence district. One Haarstick was the president of the company, and Julius Pitzman was the manager. Nolker was a director in the company. The defendant desired to sell to Nolker the lot lying immediately south of the Tower property on the east side of Grand avenue and on the north side of Longfellow boulevard. The lot then owned by the defendant had only a front of 118 feet on Grand avenue. Nolker wanted a lot 200 feet square. For the purpose of giving him a lot of that size the defendant procured through Pitzman a conveyance from Tower of the property here in controversy, being 100 feet immediately north of the 118 feet so owned by the defendant. It was designed that Nolker would erect a handsome residence on the land, but, as his plans were not then fully completed, the defendant agreed with him that if he

did not desire to keep the property it would take it off
his hands at the price he paid for it, and, subsequently,
it did so. Tower conveyed the property to Nolker by
deed, which contained the following provision: "Pro-
vided, however, and this conveyance is upon condition,
that the grantee herein shall not, nor shall his heirs or
assigns, erect or allow to be erected on the premises
above described, any dwelling nearer than fifty feet to
the east line of Grand avenue. The grantee shall not,
nor shall his heirs nor assigns, erect or put upon the
Grand avenue front of the premises hereby conveyed,
a building of any kind, save and except one dwelling-
house and appurtenances, and such dwelling-house shall
not cost less than $7,500. The grantee shall not, nor
shall his heirs or assigns, erect or permit any business
establishment to be erected on the premises hereby con-
veyed, the property being conveyed for residence pur-
poses only, nor shall he or they create or permit any
nuisance to be created or maintained on said premises
or any part thereof. In the event of the breach of any
of the foregoing conditions, the estate hereby granted
and conveyed shall end and the title to the property
aforesaid shall forthwith revert to the grantors herein,
their heirs and legal representatives. And in consider-
ation of the acceptance of the foregoing conditions by
the grantee, and of the purchase money aforesaid, the
said grantors, George F. Tower and wife, do by this
conveyance subject all property now owned by them in
said City Block No. 1366, to the same conditions and
restrictions above set forth, so that neither the said
grantors will, nor their heirs or assigns shall, hold, use
or convey their said property or any part thereof ex-
cept in conformity with and subject to the same condi-
tions and restrictions as herein stated, and in case of
sale, said property shall be sold only in lots of the size
of the lot hereby conveyed or larger."

Tower had refused to make such a conveyance until
he was informed of the name of the buyer and the pur-

pose to which the property was to be put, and made
the conveyance upon the information that Nolker de-
sired to improve it and put a very handsome house on
it.   The price paid for the 100 feet so conveyed was $90
per foot.   The price for the 118 feet immediately south
of it was $38 per foot.   Nolker held the property only
twenty-six  days, and on the 6th of January, 1890, he
conveyed it to Haarstick, president of the defendant
company, who, on the 8th of July, 1890, conveyed it to
the company. Both of those conveyances contained sim-
ilar provisions to that above quoted.   As hereinbefore
stated, the defendant company platted all its property.
It numbered on the plat the 100 feet so purchased from
Tower as lot 2 with a front of 100 feet on the east line
of Grand avenue, but the 70 feet, substantially, of the
rear of said property was subdivided by the defendant
and became parts of lots 3 and 4, that fronted on Long-
fellow boulevard.   On the 6th of August, 1890, the de-
fendant conveyed lot 4 of "Compton Heights," which
contained a portion of the 70 feet of the rear end of the
lot defendant had so acquired from Tower, to Mrs.
Philippine Tinker.   The deed to Mrs. Tinker contained
no such provision as that hereinbefore set out.   Mrs.
Tinker immediately commenced the erection of a resi-
dence on lot 4 and completed the same during the year
1890.   In July, 1891, Mrs. Tinker built a stable on the
rear of the lot 4 as an appurtenance to the residence.
The corner of the house, and perhaps the whole of the
stable, was located on the portion of the lot acquired
from Tower, which was platted as a part of lot 4 of
"Compton Heights."  Tower lived in the neighborhood
and knew of the subdividing of the lot he had sold to
Nolker, and also of the sale to Mrs. Tinker, and also of
the erection of the improvements on that lot.   He raised
no objections and took no legal steps until the 11th of
May, 1893, on which day he enclosed to the defendant
a copy of a plat by which he had subdivided the remain-
ing 510 feet, and notified the defendant that he proposed

to sell the lots so subdivided.   The subdivision con-
sisted of so dividing the 510 feet front on Grand avenue
as to lay out eight lots, having 50 feet, each, front on
Grand avenue—one lot having 55 feet on Grand avenue
—all having a depth of 140 feet eastwardly, and a pri-
vate street 50 feet wide projecting eastwardly from
Grand avenue to the eastern line of his property. At
the rear of the lots fronting on Grand avenue, the plat
contained five lots on each side of the private street,
having a front of 28 feet, each, by a depth of 130 to 135
feet, with an alley running north and south along the
rear of the lots fronting on Grand avenue, and an alley
at the rear of each of the ten lots on the private street
aforesaid, extending from east to west, and with three
lots fronting on Russell, being the street immediately
north—two of them having a front of 50 feet and one
a front of 40 feet, and all having a depth of 150 feet.
Immediately thereafter, to-wit, on the 22nd of July,
1893, the defendant instituted a suit in equity to re-
strain Tower from subdividing said 510 feet into
smaller lots than 100 feet front each.   The trial court
dismissed the bill and upon appeal by the plaintiff
therein to this court, the judgment of the circuit court
was affirmed, on the 12th of November, 1900, in an opin-
ion reported in 158 Mo. 282, where will also be found
a descriptive plat of a portion of "Compton Heights,"
of lot 4 thereof, of the property here involved, and of
the remaining 510 feet of Block No. 1366 so subdivided
by Tower.

Thereafter, on the 18th of January, 1901, the plain-
tiffs, as the executors under the will of George F.
Tower, and as devisees under the will, instituted this
action in ejectment to recover the said 100 feet so sold
originally to Nolker, except the portion which was
thrown into lot 4, so sold by the defendant to Mrs. Tin-
ker, and except the portion which was thrown into lot 3
of "Compton Heights."   The theory of the petition is
that by subdividing the 100 feet sold by Tower to Nol-

ker so as to take the 70 feet, substantially, of the rear thereof and add it to lots 3 and 4 of "Compton Heights," and by the erection of the stable on such portion which became a part of lot 4 of "Compton Heights," the defendant was guilty of a breach of the condition subsequent contained in the deed from Tower to Nolker, which entitles the plaintiffs to re-enter and recover all of the property originally conveyed by Tower to Nolker, except about 70 feet of the rear thereof which had been added to and platted as a part of lots 3 and 4 of "Compton Heights." The trial court entered a judgment for the defendant on the ground, as expressed in the memorandum opinion, that the plaintiffs had elected between the remedies afforded by law and had chosen to regard the whole limitation and obligation of the deed from Tower to Nolker as abandoned and abrogated as to both parties thereto, and, hence, was not entitled to maintain this action. From this judgment the plaintiffs appealed.

## I.

This is the second appearance of a controversy arising out of the conveyance by Tower to Nolker. The question was formerly presented to this court in the shape of a bill in equity by the present defendant against the present plaintiffs to enjoin them from subdividing the 510 feet into smaller lots than 100 feet front each. That case is reported in 158 Mo. 282. This court then fully considered the relative rights of the parties arising out of that deed, and held (1) that the obligation, not to subdivide into lots of less than 100 feet front each, was a mutual obligation, notwithstanding that upon the face of the deed the obligation not to so subdivide seemed to be obligatory on one party only, because the manifest intention of the parties was to make that obligation a correlative and mutual obligation; (2) that conceding that Tower disregarded the obligation so imposed on him not to subdivide the 510 feet, nevertheless, the defendant in this case (the plaintiff in that

case) was not entitled to enjoin Tower from so doing, because it had itself, prior to that time, subdivided the 100-foot lot it had acquired from Tower, and, therefore, it did not come into a court of equity with clean hands, and could not maintain an action for an injunction against Tower. Incidentally, it was said in that case, that Mrs. Tinker had no right to build a stable on a lot which was expressly limited to a residence and appurtenances thereto; and, incidentally, also, it was said, that the conduct of Tower in subdividing the remaining portion of the tract did not create an estoppel which would prevent him from pleading the prior subdivision of the 100 feet by the defendant company.

The result reached in that case was unquestionably correct. The defendant company was guilty of the first wrong in throwing 70 feet of the rear of the premises acquired from Tower into lots 3 and 4 of "Compton Heights." That act was a violation of the terms of the deed from Tower to Nolker. Of course, therefore, the company could not thereafter object, successfully, to Tower subdividing the 510 feet. Likewise there was no element of estoppel as against Tower which would take away his right to insist upon such prior breach of the terms of the deed by the company.

The question of whether the provisions of the deed constituted a condition subsequent, for the breach of which Tower would be entitled to re-enter and re-take possession of the premises, or whether they constituted, simply, covenants, for the breach of which Tower was entitled to recover damages, was not involved or adjudicated in that case. Neither was the question, whether, under the facts in judgment in that case, Tower was entitled to re-enter and recover possession, nor whether, if so entitled, that right was barred by limitation, nor, yet, whether Tower was precluded from so doing by having elected to pursue the other remedy of also subdividing his 510 feet, involved or decided in that case. Those are the three principal and decisive ques-

tions arising for adjudication in this case.

Defendant company acquired title to the property in controversy in July, 1890, and immediately thereafter platted the whole tract, including the 100 feet acquired by *mesne* conveyances from Tower. In so platting and subdividing, the company threw the 70 feet of the rear of the property acquired from Tower into lots 3 and 4 of ''Compton Heights.'' That constituted a breach of the terms of the deed. The company then sold lot 4 of ''Compton Heights,'' including a part of the 70 feet thus segregated from the property acquired from Tower, to Mrs. Tinker, and during the year 1890 she erected a residence thereon, one corner of which rested upon the portion of said 70 feet embraced in lot 4. Thereafter, in July, 1891, Mrs. Tinker erected a stable, which was located largely upon such portion of said 70 feet so constituting a part of lot 4. Tower took no steps whatever to prevent the company from so doing or to prevent Mrs. Tinker from so doing until May 11, 1893, when he caused the 510 feet to be subdivided as hereinbefore shown, recorded the plat, and enclosed a copy thereof to the defendant company, with a notice that he had so done and that he intended to sell the lots so subdivided into lots less than 100 feet front each. If, instead of so doing, Tower had then elected to treat the act of the defendant company in so subdividing the 100 feet he had conveyed to Nolker, and the act of Mrs. Tinker in erecting a stable on a portion thereof, as a breach of the terms of the deed and had brought suit in ejectment to recover the possession of the property sold, or so much thereof as remained after the 70 feet had been segregated and added to lots 3 and 4 of ''Compton Heights,'' a very different question would have been presented from that involved in this case. In such a contingency, the question whether the provisions of the deed prohibiting subdividing, etc., constituted a condition subsequent or a mere covenant, would have been presented for adjudication, so also the

question of whether the erection of a stable on a portion
of the premises by Mrs. Tinker came properly within
the provisions of the deed would have been presented
for adjudication.  But no such questions can properly
arise in this case, for, conceding all that the plaintiffs
herein claim with respect to the true construction of the
provisions of the deed, the fact still remains that when
the company so subdivided the portion of the 100 feet
acquired from Tower, two remedies were afforded Tow-
er by law for the correction and compensation to him
of the wrong charged to have been done by the com-
pany, to-wit:   (1)  to bring an action of ejectment and
recover the premises, and (2) to treat the terms of the
deed as violated by the company, and, therefore, as ab-
rogated so far as they imposed a servitude on the re-
maining 510 feet, and, accordingly, of subdividing the
510 feet in any manner he saw fit.   Tower, or the plain-
tiffs herein, elected to take the second remedy indicated,
and, accordingly, subdivided the 510 feet in the manner
above indicated.  By so doing, he or they precluded
themselves from afterwards asserting a right to vin-
dicate the wrong done them by bringing an action in
ejectment.   [Nanson v. Jacob, 93 Mo. l. c. 344; Bensieck
v. Cook, 110 Mo. 173; Lilly v. Menke, 143 Mo. l. c. 144;
Stone v. Cook, 179 Mo. l. c. 540; Dry Goods Co. v. War-
den, 151 Mo. 578; Bigelow on Estoppel (5 Ed.), 673;
7 Ency. Pl. and Pr., 361; Commission Co. v. Railroad,
126 Mo. l. c. 349.]

In the case last cited it was said:  "It is well-set-
tled law that where a party has the right to pursue one
of two inconsistent remedies, and he makes his election,
and institutes his suit, in case the action thus begun is
prosecuted to final judgment, or the plaintiff has re-
ceived anything of value under a claim thus asserted,
he cannot thereafter pursue another and inconsistent
remedy."

Bigelow on Estoppel (5 Ed.), 673, states the rule
thus:  "A party cannot either in the course of litigation

or in dealings *in pais* occupy inconsistent positions. Upon that rule election is founded; 'a man shall not be allowed,' in the language of the Scotch law, 'to approbate and reprobate.' And where a man has an election between several inconsistent courses of action, he will be confined to that which he first adopts; the election, if made with knowledge of the facts, is in itself binding — it cannot be withdrawn without due consent; it cannot be withdrawn though it has not been acted upon by another by any change of position.''

The Ency. of Pleading and Practice, volume 7, page 361, states the rule in this way: ''Whenever the law supplies to a party two or more methods of redress in a given case, based upon inconsistent theories, . . . the party is put to his election, and his choice of either is a bar to his resort to the other.''

Tower and the plaintiffs were fully aware of all the acts done by the defendant company and by Mrs. Tinker at the time they were done. They were, therefore, put to their election—whether they would sue in ejectment or treat the provisions and restrictions of the deed as abrogated and the servitude imposed on the remaining land by the deed as released, and they elected to take the latter course. They cannot now be heard to also maintain an action in ejectment to recover the premises. This conclusion makes it unnecessary to consider whether the terms of the deed constituted mere covenants or conditions subsequent, for it assumes the rights of the plaintiffs to be as strong as the plaintiffs contend they are.

## II.

The defendant company violated the terms of the deed in July, 1890. The plaintiffs' cause of action accrued at that time. This action was not instituted until January 18, 1901. The action was therefore barred by the provisions of section 4262, Revised Statutes 1899. The excuse offered by plaintiffs for not sooner institut-

ing this action, that they waited until the determination of the injunction suit, does not alter the case. On the contrary, it emphasizes the situation, for, if the two rights—the one to assert the right to regard the terms of the deed as abrogated so far as the 510 feet is concerned, which the plaintiffs did in the injunction suit, and the other to institute an action in ejectment for the recovery of the property—were not inconsistent rights, as the plaintiffs claim, then the pendency of the injunction suit was no bar to the institution of an ejectment suit. On the other hand, if the two rights or remedies were inconsistent, then it devolved upon the plaintiffs to elect which of the remedies they would take, and this duty or right to elect could not in any manner be impaired or affected by the fact that the company had instituted the injunction suit against them.

The plaintiffs cannot be heard to say, as they ask to be in this case, that they have had a right to waive the first breach of the terms of the deed by the company in subdividing the lot sold by Tower to Nolker, and to insist upon the second breach of the terms of that deed by Mrs. Tinker in building a stable on a part of the lot, and thus to avoid the effect of the Statute of Limitation upon their right of action, for throughout the whole of the injunction suit these plaintiffs relied upon the first breach by the defendant of the terms of the deed in so subdividing the 100-foot lot, and that case was decided in their favor upon that ground. Having so treated that act of the defendant, the plaintiffs cannot now be heard to say they waive it or that they have waived it; for their conduct in the injunction suit was in no sense of the word a waiver. On the contrary, the plaintiffs acted upon the first breach, subdivided the 510 feet, offered it for sale, and have derived all the benefits belonging to the land which attached in the absence of the restrictions and servitude placed upon it by the deed from Tower to Nolker. This action is, therefore, barred by the Statute of Limitations.

For these reasons the judgment of the circuit court is affirmed.

All concur, except *Brace, P. J.,* absent.